UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEVIN P. COOPER-KEEL, JD,

       Plaintiff,                                    Hon. Jane M. Beckering

v.                                              Case No. 1:22-cv-189

STATE OF MICHIGAN and
ROBERTS KENGIS,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Nevin Cooper-Keel, proceeding pro se, has sued Defendant Roberts Kengis in his individual and official capacities pursuant to 42 U.S.C. § 1983. Cooper-Keel alleges that Defendant Kengis, who is the Chief Judge of the 48th Circuit Court for Allegan County, Michigan, violated his First Amendment rights by hiding Cooper-Keel's comments on the Circuit Court's Facebook page which Cooper-Keel posted in response to a post by the Circuit Court.

Defendant Kengis has filed a Motion to Dismiss (ECF No. 15), which is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART**.[1]

---

[1] I deny Defendant Kengis's request for oral argument because the parties' briefs adequately develop the issues.

## I. Background[2]

This action is the latest chapter in Cooper-Keel's ongoing feud with, and criticism of, the Circuit Court and its judges, including Kengis. *See Nevin P. Cooper-Keel v. State of Michigan, et al.*, No. 1:21-cv-1076 (W.D. Mich.); *Nevin P. Cooper-Keel v. Allegan County, et al.*, No. 1:21-cv-203 (W.D. Mich.). Cooper-Keel owns and operates a bail bond agency that, until recently, was on the approved list of bail bond agencies in Allegan County. (ECF No. 14 at PageID.160.) In addition, Defendant Kengis presided over Cooper-Keel's divorce case. (*Id.*) Cooper-Keel alleges that Kengis had a personal Facebook page as well as a separate Facebook page for his political campaign for judge and that, during his divorce trial, Kengis clicked on Cooper-Keel's LinkedIn profile. Cooper-Keel used this act as the basis for a motion to disqualify Kengis from deciding his divorce case, but Kengis denied his motion. After Cooper-Keel alleged that Kengis had been stalking him, Kengis deleted his private and campaign Facebook pages. (*Id.* at PageID.13–14.)

The real dispute in this matter concerns the Circuit Court's Facebook page. On September 7, 2021, Cooper-Keel made the following comment on the Circuit Court's page referring to Kengis, "Is he going to help rig some more circuit court trials in that crooked ass sh*thole of a circuit court? https://www.google.com/amp/s/amp.hollandsentinel.com/amp/114417676." (*Id.* at PageID.14; ECF No. 14-1 at PageID.168.) The article Cooper-Keel referenced in his comments reported on a criminal case in which the defendant was granted a new trial after it was discovered that then-Chief Judge Margaret Bakker had sent the prosecutor emails regarding the case during the trial. The order granting the new trial has since been reversed by the Michigan Court of Appeals. *People v. Loew*, No. 352056, 2022 WL 130253 (Mich. Ct. App. Jan. 13, 2022).

---

[2] The factual recitation herein is based on the facts alleged in the Amended Verified Complaint, which are taken as true. The legal conclusions and opinions therein have been disregarded.

On February 22, 2022, after Kengis replaced Bakker as the Chief Judge, the Circuit Court posted an announcement on its Facebook page introducing the recently-hired director of the Friend of the Court. Cooper-Keel made a comment in response to the post similar to the comment he had made on September 7, 2021. Later in the day, the comments were hidden, and the post no longer indicated that comments had been made. (*Id.* at PageID.13–14.) In contrast, Cooper-Keel's September 21, 2021 comment was never deleted, hidden, or censored in any way. (*Id.* at PageID.14.)

Cooper-Keel filed this action on March 2, 2022, against the State of Michigan and Kengis, alleging the following claims: (1) violation of his First Amendment rights; (2) violation of the Hatch Act, 5 U.S.C. § 7324; (3) violation of Mich. Comp. Laws § 15.404; and (4) violation of Article 1, Section 5 of the Michigan Constitution. On March 23, 2022, Kengis filed a motion to dismiss the claims alleged in the original complaint. (ECF No. 6.) On March 25, 2020, Cooper-Keel filed a motion to amend his pleadings, stating that he wished to drop the State of Michigan as a Defendant and to sue Kengis only in his individual capacity. (ECF No. 9 at PageID.117.) On March 29, 2022, I granted Cooper-Keel's motion, noting that he was entitled to amend as of right and that his Amended Verified Complaint became the operative pleading, thus mooting Kengis's pending motion to dismiss. (ECF No. 13 at PageID.151–52.)

In spite of Cooper-Keel's representations in his motion, his Amended Verified Complaint did not drop the State of Michigan as a Defendant and still named Kengis in his official capacity. Accordingly, on May 10, 2022, I directed Cooper-Keel to clarify his intent as to the State of Michigan and the official capacity claim against Kengis. (ECF No. 17.) Cooper-Keel responded by voluntarily dismissing the State of Michigan (ECF No. 22), but he did not address the official capacity claim.

Kengis filed the present motion to dismiss on April 8, 2022. Cooper-Keel's sole claim in his Amended Verified Complaint is his First Amendment claim against Kengis in his individual and official capacities.[3] For relief, Cooper-Keel requests: (1) an injunction preventing Kengis from continuing to violate his rights and directing him to immediately restore the comments on the post; (2) a declaratory judgment that Kengis has violated and continues to violate his First Amendment rights by censoring his comments; and (3) damages for violation of his rights.

## II.  Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement

---

[3] Cooper-Keel alleges that Judge Bakker retaliated against him for exercising his right to speak on the Circuit Court's Facebook page, but Judge Bakker is not a defendant in this action. (ECF No. 14 at PageID.160.) Thus, there is no claim against her.

to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[4] *Id.* at 678-79.

### III. Discussion

#### A. Individual Capacity Claim

Kengis contends that Cooper-Keel's individual capacity claim is subject to dismissal on two grounds: (1) lack of personal involvement in the alleged violation; and (2) qualified immunity. I find it unnecessary to address the personal involvement issue because even if Cooper-Keel has sufficiently alleged Kengis's personal involvement, Kengis is entitled to qualified immunity.[5]

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of*

---

[4] Although a court generally must construe a pro se litigant's pleadings liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating that pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers"), I decline to apply the rule in this case as Cooper-Keel admits that he has a law degree. *See Baker v. Chagrin Valley Med. Corp.*, No. C82-122, 1985 WL 445, at *1 n.1 (N.D. Ohio Mar. 22, 1985) (declining to construe the plaintiff-law-school-graduate's pleadings liberally and instead "giv[ing] them the same careful scrutiny accorded to pleadings filed by other law school graduates").

[5] Qualified immunity is inapplicable to official capacity claims. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

*Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft*, 563 U.S. at 742). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993 (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

Although the Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015), it has also said that, when the "pleadings in th[e]

6

case are not ambiguous," and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings," the Court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005). Consideration of qualified immunity at this juncture is appropriate here because no clearly established violation could be found under the facts Cooper-Keel alleges.

As noted above, to avoid qualified immunity, Cooper-Keel must show that "existing law" placed the constitutionality of Kengis's actions "beyond debate." *District of Columbia v. Wesby*, __ U.S. __ 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft*, 563 U.S. at 741). In other words, "[t]he law must have been so clear that *every* reasonable offic[ial] in [Kengis's] shoes would have recognized that [hiding all comments on a Facebook page]" violated the First Amendment. *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020). To determine whether a right is clearly established, a district court within the Sixth Circuit may consider binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point. *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Risbridger v. Connelly*, 275 F.3 565, 569 (6th Cir. 2002)).

As the Eastern District of Michigan has recently observed, "[w]hile . . . the right to free expression in public forums has been clearly established for decades, the applicability of those doctrines to social media is anything but." *Blackwell v. City of Inkster*, __ F. Supp. 3d __, 2022 WL 989212, at *13 (E.D. Mich. Mar. 31, 2022). The Sixth Circuit has expressed a similar view, noting that "[c]ourts have not reached consensus on how First Amendment protections will apply to comments on social media." *Novak v. City of Parma*, 932 F.3d 421, 434 (6th Cir. 2019) (citing *Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1012–13 (E.D. Ky. 2018), and *Davison v. Randall*, 912

7

F.3d 666, 687–88 (4th Cir. 2019)). Whether the Circuit Court's Facebook page is considered a public forum or a venue for government speech is not dispositive of the present qualified immunity inquiry, as Cooper-Keel asserts. His focus on this distinction in his response misapprehends the proper analysis. For purposes of the instant motion, the Court must *assume* that the Circuit Court's social media page is a type of public forum, but also, it must insist on existing caselaw that involved a sufficiently similar set of facts that would have provided clear notice about what the law requires. *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019)—the sole case Cooper-Keel cites—does not do the trick. In *Davison*, the defendant deleted an entire post, including the plaintiff's comments and all other public comments, and blocked the plaintiff from using his page to comment on the defendant's page (which the court found to be a public forum). *Id.* at 675–76, 681–87. Here, in contrast to *Davison*, while Cooper-Keel alleges that all of the comments to a post were hidden, he does not allege that he was blocked or banned from the Circuit Court's Facebook page or barred from further commenting on its posts. *Davison* is thus materially distinguishable from the instant case. *See Sgaggio v. Young*, No. 20-cv-1977, 2022 WL 970008, at *11 (D. Colo. Mar. 31, 2022) (finding *Davison* and *Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019), similar to the facts in that case as they both involved blocking the plaintiff from accessing the government-sponsored Facebook page). The Second Circuit recently underlined this distinction in *Wagschal v. Skoufis*, 857 F. App'x 18 (2d Cir. 2021), observing that "[b]locking a person on Twitter may well frustrate [the plaintiff's] ability to follow along with and engage in an online discussion, while hiding a comment on Facebook merely shields the comment from viewing by the general public." *Id.* The court held that the defendant was entitled to qualified immunity because its prior decision in *Knight First Amendment Institute v. Trump*, 928 F.3d 226 (2d Cir. 2019), *vacated as moot sub*

8

*nom. Biden v. Knight First Amendment Institute*, __ U.S. __, 141 S. Ct. 1220 (2021), did not address whether hiding comments on Facebook would unconstitutionally burden speech. *Id.*

As in *Wagschal,* Cooper-Keel fails to demonstrate that, at the time the comments on the Circuit Court's Facebook page were hidden, it was clearly established that doing so violated the commenter's First Amendment rights. Accordingly, the individual capacity claim should be dismissed based on qualified immunity.

### B. Official Capacity Claim

Kengis did not address the official capacity claim in his opening brief, understandably, given Cooper-Keel's equivocation as to whether he intended to assert such a claim. An official capacity claim thus remains in the case. In any event, the official capacity claim must be dismissed with regard to Cooper-Keel's claim for damages because it is barred by the Eleventh Amendment.

The Eleventh Amendment generally bars federal actions against a state unless the state has waived its sovereign immunity or consented to suit in federal court. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). The State of Michigan has not consented to be sued for civil rights violations in federal court. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see Quern v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh

Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)).

Moreover, a state official sued in his official capacity is not a "person" subject to suit for money damages under Section 1983. *Will*, 491 U.S. at 70–71. Because Kengis is a Michigan judge, he is considered a state official. *See LaFountain v. Meyer*, No. 1:16-cv-658, 2016 WL 3679279, at *2 (W.D. Mich. July 12, 2016) ("The Sixth Circuit Court of Appeals has already considered the application of Eleventh Amendment immunity to Michigan state courts. The Sixth Circuit determined that Michigan's courts are arms of the state and thus entitled to Eleventh Amendment immunity.") (citing *Pucci v. 19th District Court*, 628 F.3d 752, 760–74 (6th Cir. 2010)); *Varner v. Schrock*, No. 1:14-cv-999, 2014 WL 5441807, at *3 (W.D. Mich. Oct. 24, 2014) (noting that the plaintiff's suit against the clerk in her official capacity was equivalent to a suit brought against the circuit court and that "[t]he circuit courts of the State of Michigan are arms of the state and, thus, immune from suit"). Thus, Cooper-Keel's official capacity damage claim must be dismissed.

On the other hand, an official-capacity action seeking prospective injunctive and/or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Here, Cooper-Keel has requested both injunctive and declaratory relief as to the alleged ongoing violation of his First Amendment rights. Kengis has not addressed this aspect of the case, as he asserts that Cooper-Keel "has already conceded he is not suing Judge Kengis in his official capacity." (ECF No. 20 at PageID.236.) As set forth above, this is not so. Cooper-Keel's citation of *Gay v. Cabinet for Health & Family Services Department*, No. 18-5285, 2019 WL 1338524 (6th Cir. Jan. 23, 2019), for the proposition that a defendant can be sued in his

10

official capacity for injunctive relief confirms his intention. Therefore, this aspect of the claim should be permitted to proceed.

### III.  Conclusion

For the foregoing reasons, I recommend that the Court **grant in part and deny in part** Kengis's motion to dismiss (ECF No. 15), dismissing the individual capacity claim and official capacity claim for damages but allowing the claim for injunctive and declaratory relief to proceed.

Dated: June 17, 2022                                  /s/ Sally J. Berens
                                                              SALLY J. BERENS
                                                              U.S. Magistrate Judge

### **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).