UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEVIN COOPER-KEEL, JD,

    Plaintiff,                                     Hon. Sally J. Berens

v.                                                                    Case No. 1:22-cv-189

STATE OF MICHIGAN, et al.,

    Defendants.
_____/

## OPINION[1]

Plaintiff Nevin Cooper-Keel, proceeding pro se, filed his complaint in this action on March 2, 2022, pursuant to 42 U.S.C. § 1983, alleging that Defendants State of Michigan and Roberts Kengis violated his First Amendment rights by hiding his comments on the Allegan County Circuit Court's Facebook page. Cooper-Keel subsequently filed an amended complaint (ECF No. 14), and eventually dismissed his claim against the State of Michigan. (ECF No. 22.)

Following the Court's ruling on Defendant Kengis's motion to dismiss, the sole remaining claim in the case is Cooper-Keel's First Amendment claim for injunctive relief against Defendant Kengis in his official capacity. (ECF Nos. 24 and 27.)

Presently before the Court is Defendant Kengis's Motion for Summary Judgment. (ECF No. 48.) The motion is fully briefed and ready for decision. For the following reasons, the Court will **GRANT** the motion and dismiss this action with prejudice.[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have this Court conduct all further proceedings in this case, including entry of judgment. (ECF No. 31 at PageID.313.)

[2] Although Defendant Kengis has requested oral argument, the Court finds that oral argument is unnecessary as the parties' briefs adequately develop the issues in contention.

## I. Background

Defendant Kengis is currently the Chief Judge of the Allegan County Circuit Court. (ECF No. 50 at PageID.442.) Defendant Kengis presided over Cooper-Keel's previous divorce case. (ECF No. 14 at PageID.160.) During that proceeding, Cooper-Keel moved to disqualify Defendant Kengis from deciding the case, but Kengis denied the motion. (*Id.* at PageID.160–61.) That ruling was subsequently affirmed by the Michigan Court of Appeals. *See Cooper-Keel v. Cooper-Keel*, No. 359288, 2022 WL 3333251, at *8–9 (Mich. Ct. App. Aug. 11, 2022).

Cooper-Keel alleges that on September 7, 2021, he made the following comment on the Circuit Court's Facebook page referring to Kengis, "Is he going to help rig some more circuit court trials in that crooked ass sh*thole of a circuit court? https://www. google.com/amp/s/amp.holland sentinel.com/amp/114417676." (ECF No. 14 at PageID.158; ECF No. 14-1 at PageID.168.) The article Cooper-Keel referenced in his comments reported on a criminal case in which the defendant was granted a new trial after it was discovered that then-Chief Judge Margaret Bakker had sent the prosecutor emails regarding the case during the trial. *See People v. Loew*, No. 352056, 340 Mich. App. 100 (Mich. Ct. App. Jan. 13, 2022). Cooper-Keel further alleges that on February 22, 2022, after Defendant Kengis became Chief Judge, the Circuit Court posted an announcement on its Facebook page introducing the recently-hired director of the Friend of the Court. Cooper-Keel made a comment in response to the post similar to the comment he had made on September 7, 2021. Later in the day, the comments were hidden, and the post no longer indicated that comments had been made. (ECF No. 14 at PageID.157–58.) In contrast, Cooper-Keel alleges, his September 21, 2021 comment was never deleted, hidden, or censored in any way. (*Id.* at PageID.158.)

The Circuit Court's official Facebook page was created on December 18, 2018, when Margaret Bakker was the Chief Judge. (ECF No. 50 at PageID.443.) The intended purpose of the

Facebook page was to inform the public about court events and news, not to interact or debate matters with the public. (*Id.*; ECF No. 51 at PageID.448.) Chris Dulac, the Circuit Court's Finance Coordinator, was designated a Page Administrator for the Circuit Court's Facebook page. (*Id.*) Judge Bakker was also listed as a Page Administrator, but she has not posted to or edited the Circuit Court's Facebook page. (ECF No. 50 at PageID.443; ECF No. 51 at PageID.448.) As Chief Judge, Defendant Kengis has general oversight of court personnel, but currently he is not, nor has he ever been, a Page Administrator of the Circuit Court's Facebook page. (ECF No. 50 at PageID.443.)

At the time the Facebook page was created, it did not, and still does not, allow visitor posts. Instead, only Circuit Court personnel are able to post to the page. (ECF No. 14 at PageID.155; ECF No. 51 at PageID.448.) However, users or followers had the ability to interact with posts, which continued from December 2018 through October 2021. Mr. Dulac thus was required to review each individual post on the Circuit Court's Facebook page for user comments. (ECF No. 51 at PageID.448.) When Defendant Kengis became Chief Judge in January 2022, he learned that Mr. Dulac was devoting time to manually reviewing each individual post on the Circuit Court's Facebook page, which took substantial time away from his other job duties. (ECF No. 50 at PageID.444.) In his capacity as Chief Judge, Defendant Kengis decided to eliminate the ability of all users and followers to comment on Circuit Court Facebook posts in order to reduce the amount of time Mr. Dulac spent administering the Facebook page and ensure that the Facebook page was used for Circuit Court informational purposes, rather than as a platform to interact with the public. (*Id.*) During that same month (and apparently pursuant to Defendant Kengis's decision), Jennifer Brink, the Circuit Court Administrator, asked Mr. Dulac to try to limit visitor/user comments. (ECF No. 49-4.) Mr. Dulac attempted to set limits on the Facebook page that would prevent the public from commenting on court posts, but was unsuccessful. (*Id.*; ECF No. 51 at PageID.449.)

3

Mr. Dulac informed Ms. Brink that, when the next post was made, he would adjust the settings to preclude comments. (ECF No. 49-4.)

On February 22, 2022, Mr. Dulac published a post to the Facebook page regarding a recent new hire. Shortly thereafter, Mr. Dulac discovered that the settings had erroneously allowed users and followers to comment on the post and that some users had already posted comments to the post. (ECF No. 51 at PageID.449.) After discovering the oversight, Mr. Dulac removed all of the comments and limited users' ability to further comment on the post. (*Id.*) He also discovered that prior posts still inadvertently allowed users and followers to comment on Circuit Court posts and manually changed the settings on each post to limit any ability to further comment on the prior posts. (*Id.*)

At present, all of the Circuit Court's Facebook posts limit the ability of users and followers to post comments. (*Id.*) No additional posts have been made to the Facebook page since the February 22, 2022 post. (*Id.*) Mr. Dulac states that the Circuit Court has never had a custom or practice of blocking or banning any person from accessing its Facebook page and that Cooper-Keel was never blocked or banned from the Facebook page. (*Id.* at PageID.449–50.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

4

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

#### A. Rule 41(b) Dismissal

Apart from seeking summary judgment, Defendant Kengis argues separately that the Court should dismiss the action pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute. Rule 41(b) provides that a court may dismiss an action if "the plaintiff fails to prosecute or to comply with these rules or a court order." Kengis contends that dismissal on this basis is warranted because, on two occasions, Cooper-Keel failed to comply with Local Rule 7.1(d) by filing motions without separate certificates of concurrence. (ECF No. 49 at PageID.411 (citing ECF Nos. 42 and 47).) Defendant Kengis further argues that Cooper-Keel's failure to conduct any discovery in this case amounts to "a clear failure to prosecute his case." (*Id.*) Cooper-Keel responds that he "was a little busy getting maliciously prosecuted over the discovery period for some of the discovery [he]'d dreamt about." (ECF No. 53 at PageID.454.) The malicious prosecution excuse apparently refers to the "hunters harassment" misdemeanor charge that Cooper-Keel has referred to in Case No. 1:22-cv-1236. Cooper-Keel suggests that this charge was part of a conspiracy to occupy him and divert the time and resources he would have otherwise devoted to this case to defending the misdemeanor charge. (*Id.* at PageID.455.)

In *Fleetwood v. Wright*, No. 95-1565, 1996 WL 116836 (6th Cir. Mar. 14, 1996), the Sixth Circuit held that the district court abused its discretion in dismissing the plaintiff's action under Rule 41(b) for failure to comply with the court's local rules. In providing its rationale, the court set forth three rules that are applicable here. First, a "district court may not dismiss an action for failure to comply with the court's local rules unless the non-compliance rises to the level required

5

for dismissal by Fed. R. Civ. P. 41(b)." *Id.* at *1 (citing *Carver v. Bunch*, 946 F.2d 451, 453–54 (6th Cir. 1991)). Second, a Rule 41(b) dismissal is proper "only in extreme situations demonstrating a clear record of delay or contumacious conduct by the plaintiff." *Id.* (citing *Carver*, 946 F.2d at 454). Finally, a district court should not dismiss a case under Rule 41(b) without giving the plaintiff notice that it is contemplating such dismissal. *Id.* (citing *Carver*, 946 F.2d at 454). As applied here, these rules indicate that a Rule 41(a) dismissal is not warranted. First, a failure to file a separate certificate as required by Local Rule 7.1(d) is not the type of rule violation that warrants dismissal under Rule 41(b). Second, the circumstances here do not evince "a clear record of delay or contumacious conduct." While it is true that Cooper-Keel failed to comply with the Court's local rules and failed to conduct any discovery during the allowed period, the Court views these failures simply as a failure to develop the case rather than a failure to prosecute. Last, Cooper-Keel has not been afforded notice that the Court was contemplating a Rule 41(b) dismissal.

In sum, Cooper-Keel has not done much, if anything, to develop his case. The malicious prosecution charge is no excuse, particularly because the parties were given ample time to conduct discovery, and Cooper-Keel never sought an extension of time. Nonetheless, the Court finds that a Rule 41(b) dismissal is not appropriate.

      **B.**    **Summary Judgment**

As noted, Cooper-Keel's remaining claim is that Defendant Kengis or someone acting on his behalf turned off Cooper-Keel's ability to comment on a post on the Circuit Court's Facebook page, thereby violating his First Amendment right to speak on a public forum. His claim is limited to one for prospective injunctive and declaratory relief. In particular, Cooper-Keel requests an injunction directing Defendant Kengis to "immediately turn the comments back on on the[] official 48th Circuit court [F]acebook page." (ECF No. 14 at PageID.164.)

6

In support of his motion for summary judgment, Defendant Kengis has put forth his own affidavit, an affidavit from Mr. Dulac, and a January 5, 2022 email chain between Mr. Dulac and Ms. Brink regarding efforts to limit user/visitor posts or comments. (ECF Nos. 50, 50, and 49-4.) In contrast, Cooper-Keel failed to offer an affidavit or evidence that could be presented in admissible form at trial that could serve to create a genuine issue of material fact. To demonstrate that a fact is genuinely disputed, a party may submit an affidavit based on personal knowledge and/or "cit[e] to particular parts of materials in the record, including depositions, documents, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), (4). The non-moving party may not merely rest on conclusory allegations contained in the complaint, but instead must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Cleveland v. Frontstream DTI, LLC*, 531 F. App'x 541, 543 (6th Cir. 2013) (citing *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989)). Here, Cooper-Keel relies on nothing more than his own unsupported allegations, which are insufficient to defeat summary judgment. *See Dollar Dev. I, LLC v. Village Green Props., Ltd.*, No. 1:05-CV-858, 2006 WL 572709, at *3 (W.D. Mich. Mar. 8, 2006) (noting that "a court may not consider allegations unsupported by facts in the record"). The question is thus whether Defendant Kengis has met his summary judgment burden.

"A party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 466 F.3d 391, 394 (6th Cir. 2006) (internal quotation marks omitted). Before the Court considers the propriety of an injunction, it must first determine whether Cooper-Keel has demonstrated a

7

violation of his First Amendment rights. To determine whether a speech restriction on publicly owned property, *i.e.*, the Circuit Court's Facebook page, is compatible with the First Amendment, courts consider: "(1) whether the speech is protected under the First Amendment; (2) what type of forum is at issue and, therefore, what constitutional standard applies; (3) whether the restriction on speech in question satisfies the constitutional standard for the forum." *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). For purposes of this analysis, the Court assumes that Cooper-Keel's speech is protected by the First Amendment.

The Supreme Court has recognized three types of public fora: the traditional public forum, the designated public forum, and the limited public forum. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009). A traditional public forum is one which by tradition or government mandate has "been devoted to assembly and debate, such as a street or park." *Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir. 2001) (internal quotation marks omitted). "The government creates a designated public forum when it opens a piece of public property to the public at large, treating [it] as if it were a traditional public forum." *Miller*, 622 F.3d at 534. Government restrictions based on the content of speech in traditional and designated public fora are subject to strict scrutiny analysis. *Pleasant Grove*, 555 U.S. at 469–70.

A limited public forum is distinct from a traditional or designated public forum. *Miller*, 622 F.3d at 535 n. 1. As the Sixth Circuit has explained, "[a] government entity may 'create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" *Miller*, 622 F.3d at 534–35 (quoting *Pleasant Grove*, 555 U.S. at 470). "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). The State's power to restrict speech in a limited forum is not, however, unlimited. *Id.* Any such

restriction "must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum." *Id.* at 106–07 (internal citations and quotation marks omitted).

"A nonpublic forum, in contrast, is a government-owned property that is not by tradition or governmental designation a forum for public communication." *Miller*, 622 F.3d at 534 (internal quotation marks omitted). For a nonpublic forum, the government may limit access "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007) (internal quotation marks omitted). In determining whether a forum is some type of public forum or a non-public forum, the Sixth Circuit focuses on whether the government has opened the property for public discourse. *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004).

Neither party directly addresses the forum nature of the Circuit Court's Facebook page, but it is clear that it is neither a traditional public forum nor a designated public forum because there is no evidence that the Circuit Court has treated its Facebook page as a traditional public forum. As between a limited public forum and a non-public forum, the only relevant evidence in the record, which comes from Defendant Kengis and Mr. Dulac, suggests that the Facebook page was a non-public forum because its intended purpose was simply to inform the public about court events and news, rather than to interact or debate with the public. (ECF No. 50 at PageID.443; ECF No. 51 at PageID.448.) However, the way the Circuit Court initially actually used its Facebook page, including by allowing comments, would seem to demonstrate that it was a limited public forum. The Court need not resolve the issue, however, because regardless of how the Facebook page is classified, "the result would be the same, because government limitations on

9

speech in both a limited public forum and a nonpublic forum receive the same level of scrutiny." *Miller*, 622 F.3d at 535–36. That is, any restrictions on speech imposed by the Circuit Court must be "reasonable and viewpoint neutral." *Id.* at 536.

Here, the evidence, which is not in dispute, shows that in January 2022—more than one month before Cooper-Keel posted his comments in response to the February 22, 2022 Circuit Court post—Mr. Dulac, apparently pursuant to Defendant Kengis's decision to no longer allow comments on new posts or new comments on existing posts, investigated limiting or precluding user/visitor comments but was unable to determined how to accomplish this task. Nonetheless, he indicated that he would adjust the settings on the next post. When the February 22, 2022 post was made, Mr. Dulac removed all of the comments and limited users' ability to further comment on the post. This change was also made to existing posts.

Precluding all users/visitors from commenting on Circuit Court posts is both reasonable in light of the purpose of the Facebook page and viewpoint neutral, as all users are precluded from posting comments, regardless of viewpoint. The Circuit Court's rule precluding comments altogether does not violate the First Amendment's prohibition against viewpoint discrimination. *See DeBoer v. Village of Oak Park*, 267 F.3d 558, 572 (7th Cir. 2001) (noting that "the First Amendment's requirement of viewpoint neutrality emphasizes that the government should be indifferent to a speaker's viewpoint, not that it mandate that no viewpoint or all viewpoints be expressed" (internal quotation marks omitted)).

Without citing any applicable authority, Cooper-Keel suggests that the First Amendment guarantees him the right to post comments on the Circuit Court's Facebook page simply because it is owned by the government. He states that he "want[s] the ability to comment turned back on so that [he] can relentlessly tell the public about this case, and other true facts . . . ." (ECF No. 53

10

at PageID.460.) But that is not the law. As the Supreme Court has observed, "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). The government "is not required to indefinitely retain the open character of [a] facility," and may close a forum as it sees fit. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). Thus, even if the Circuit Court previously allowed users/visitors to post comments in response to Circuit Court posts, the First Amendment does not prohibit the Circuit Court from adopting a policy that precludes all user comments regardless of viewpoint. *See Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 77 (1st Cir. 2004) ("The government is free to change the nature of any nontraditional forum as it wishes."); *Currier v. Potter*, 379 F.3d 716, 728 (9th Cir. 2004) (noting that the government may close a designated public forum "whenever it wants"); *Tyler v. Coeur d'Alene Sch. Dist. #271*, 568 F. Supp. 3d 1071, 1086–87 (D. Idaho. 2021) ("[E]ven if schools within the District were a designated public forum at one time, 'the government may decide to close a designated public forum.'" (quoting *Johnson v. Perry*, 859 F.3d 156, 172 (2d Cir. 2017)).

      Finally, Cooper-Keel argues that the policy that Defendant Kengis adopted is an unconstitutional prior restraint. In broad terms, "[a] prior restraint is any law 'forbidding certain communications when issued in advance of the time that such communications are to occur." *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)); *see also Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001) ("A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials."). The cases he cites, however, are easily distinguishable. Both cases, *Near v. Minnesota*, 283 U.S. 697 (1931), and *New York*

11

*Times Co. v. United States*, 403 U.S. 713 (1971), involved government action aimed at preventing newspapers from publishing certain information that was deemed harmful. Both cases involved the First Amendment guarantee of freedom of the press. Neither case involved a citizen seeking to access government-owned property in the face of a viewpoint neutral policy precluding citizens from commenting on government-created communications on such property. In fact, deeming the Circuit Court policy a prior restraint, as Cooper-Keel requests, is contrary to the well-established law cited above recognizing a governmental entity's right to restrict access to its property. *See Perry v. McDonald*, 280 F.3d 159, 172 (2d Cir. 2001) ("Because we have concluded that the vanity-plate regime is a nonpublic forum and that the rules governing it are reasonable and viewpoint-neutral, we do not find the regime to be an unconstitutional prior restraint.").

In short, because Cooper-Keel has not shown that Defendant Kengis violated his First Amendment rights by enacting a policy preluding all users/visitors from posting on the Facebook page, and because Cooper-Keel does not have a First Amendment right to post on the Facebook page merely because the Circuit Court created it, he fails to demonstrate that he will suffer any continuing injury warranting injunctive relief.

## IV.  Conclusion

For the foregoing reasons, the Court will grant Defendant Kengis's Motion for Summary Judgment (ECF No. 48) and dismiss this action **with prejudice**.

A separate order will enter.


Dated: June 14, 2023                                         /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge